FRED SIMMONS, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division B.

Opinion filed May 28, 1930.

· *W. P. Chavous,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for Defendant in Error.

BUFORD, J.—In this case the plaintiff in error was convicted of manslaughter on an indictment charging murder in the first degree. The State relied upon circumstantial evidence for a conviction. It is well settled that circumstantial evidence may be relied upon to establish guilt, but the value of this evidence consists in the conclusive nature and tendency of the circumstances relied upon. They must not only be consistent with guilt, but must be inconsistent with innocence. Mobley v. State, 41 Fla. 621, 26 So. R. 732; Pate v. State, 72 Fla. 97, 72 So. R. 517.

The plaintiff in error and one George Williams were indicted jointly for the murder of one Jim Moore. The evidence shows that Jim Moore came to his death by a knife wound inflicted in the neck. The wound was inflicted with a knife which was shown to have been in the possession of the accused, Fred Simmons. The knife was found at the place where Moore met his death. On Saturday night prior to the time that Moore's body was found on Tuesday, Fred Simmons and George Williams left a place where a gathering of negroes was in progress and, after being away for quite a while, returned together. Several persons noticed blood on Williams when they returned. When Simmons left with Williams he was wearing a brown sweater. Later the same sweater was found in the woods and it, too, was bloody. The evidence showed that Moore carried considerable sums of money on his person; that this was common knowledge among the negroes. No money was found on his person when he was found dead. A one dollar bill was found where the signs on the ground indicated the killing occurred. Moore was not only cut in the neck, but was also stabbed in the back and had been beaten over the head with some instrument, the wounds being such as might have been inflicted with the butt of a

pistol. A broken pistol was found at the scene of the homicide.

Williams left the vicinity of the homicide on Sunday morning after being out with Simmons on Saturday night, and so far as the record shows, no one acquainted with him ever has seen him since.

Simmons denied going away from the gathering with Williams. This statement of his is contradicted by a number of witnesses. The jury evidently did not believe his statement. Simmons also testified that he loaned Williams the particular knife with which the homicide was evidently committed and that Williams went off without him, carrying the knife with him, and returned without the knife saying that he had lost it. The record shows that Williams was a stranger in that community. The jury evidently did not believe Simmons' statement that he had loaned Williams the knife. The jury was warranted in not believing that statement, because competent evidence showed that statement, that he did not go away from the gathering with Williams, to be false.

We think there is ample evidence upon which the jury could reasonably conclude to a moral certainty that Williams and Simmons unlawfully killed the deceased, Jim Moore.

There were a number of assignments of error based upon the action of the court in overruling objections to questions and others based upon the action of the court in sustaining objections to questions. It is not necessary to discuss these assignments of error because if any error was committed in this respect it is not shown to have been injurious to the accused and, therefore, if error at all, was harmless.

The judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.